## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Marshaun Boykin, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 16 CV 50162 |
| v. | ) | |
| | ) | Magistrate Judge Iain D. Johnston |
| Brett Sandholm, *et al.* | ) | |
| | ) | |
| *Defendant*s. | ) | |

## **REPORT AND RECOMMENDATION**

It is the Court's Report and Recommendation that Defendant's request for dismissal of the complaint be granted and that Plaintiff's claims be dismissed without prejudice. Any objection to this Report and Recommendation must be filed by October 6, 2017. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## **STATEMENT**

On June 2, 2016, Plaintiff Marshaun Boykin filed a complaint pursuant to 42 U.S.C. § 1983 relating to his incarceration at Dixon Correctional Center. Plaintiff alleges Defendants, Correctional Officer Brett Sandholm and eight other unidentified correctional officers,[1] violated his constitution rights by: (1) using unjustified force against him; (2) acting with deliberate indifference to his serious medical needs; and (3) denying him equal protection.

Defendant Sandholm has not yet answered the complaint, but he has asserted the affirmative defense that Plaintiff has failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a). On August 4, 2017, the Court held a *Pavey* hearing on Plaintiff's exhaustion of his administrative remedies. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see also Wagoner v. Lemmon*, 778 F.3d 586, 591-92 (7th Cir. 2015) (finding that courts should hold a *Pavey* hearing before deciding the action on the merits). Plaintiff, James Martens (Grievance Officer at Dixon Correctional Center) and Troy Hendrix (Clinical Services Supervisor at Dixon Correctional Center) testified at the hearing.

---

[1] On screening Plaintiff's *pro se* complaint, the district judge dismissed Defendant Warden Enloe for lack of personal involvement. *See* Dkt. 5.

Defendant relied on the exhibits attached to Plaintiff's complaint and also submitted two grievance-related logs during the hearing. *See* Dkts. 38-39.

# I. ALLEGATIONS

On March 26, 2016, Plaintiff was incarcerated at Dixon Correctional Center. Plaintiff alleges the following in his complaint. He was in the gymnasium when a fight broke out between two other inmates. Defendant Sandholm broke up the fight and placed the other inmates in restraints. However, one of the inmates kicked Plaintiff in the neck and knocked him out of his wheelchair. Eight unidentified correctional officers arrived and "slammed" Plaintiff to the ground. After repeatedly punching Plaintiff, they threw him into a van and took him to segregation. Plaintiff was the only inmate who went to segregation. Despite suffering injuries from the incident, Plaintiff was denied medical treatment that day. However, at a later date, Plaintiff submitted a sick call request and received pain medication for his injuries.

Attached to Plaintiff's complaint is a grievance that Plaintiff asserts he submitted on March 26, 2016. Plaintiff grieved of staff conduct relating to the incident and requested medical attention and to be removed from segregation. Plaintiff asserted that he received his grievance form back on May 7, 2016, with no response. Plaintiff submitted the instant complaint the same day.

# II. DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action under 42 U.S.C. § 1983 with respect to prison conditions must first exhaust all administrative remedies available before being allowed to proceed with the lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999); *Pavey*, 544 F.3d at 740. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement, such that a prisoner must file grievances "in the place, and at the time, the prison's rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

The PLRA requires an inmate to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). Therefore, exhaustion is not necessary when prison officials block an inmate from the administrative process. *See Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Prison authorities cannot "immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Failure to exhaust is an affirmative defense, so it is the defendant's burden to prove the plaintiff did not exhaust his administrative remedies before bringing suit.

*Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, the defendants must show by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that remedy. *Jones v. Dart*, No. 14 C 1929, 2016 U.S. Dist. LEXIS 51376, at *5 (N.D. Ill. Apr. 18, 2016). Review of a district court's exhaustion finding is *de novo*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); however, credibility determinations made by the court are reviewed for clear error. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011).

Defendant argues that Plaintiff did not submit his March 26, 2016 grievance relating to the claims he now raises in his complaint. Plaintiff maintains that he submitted his grievance, but that the grievance officers failed to respond to it.

At the hearing, James Martens testified that he was the Grievance Officer at Dixon Correctional Center and was designated to receive all grievances from inmates through the institutional mail. Mr. Martens explained that after he receives a grievance from an inmate, he would review it and forward non-emergency grievances to the counselor assigned to that housing unit for a response. However, if the inmate designated the grievance as an emergency, it would be forwarded directly to the Chief Administrative Officer, namely the warden or her designee, which in 2016 was Troy Hendrix, to determine whether it would be processed as an emergency.

Troy Hendrix also testified at the hearing. Mr. Hendrix was the Clinical Services Supervisor at Dixon Correctional Center and supervised the grievance process. He testified that if Plaintiff's March 26, 2016 grievance were properly submitted it would have been forwarded to him for review and he would have filled out the Emergency Review portion of the grievance form. If Mr. Hendrix approved the grievance as an emergency, he would have forwarded it to the grievance officer for an expedited response. If he determined that the grievance was not an emergency, Mr. Hendrix would have indicated this on the grievance form and the grievance officer would have returned it to the inmate to be processed through the normal grievance process.

Mr. Martens and Mr. Hendrix both testified that the grievance log showed no record of Plaintiff filing his March 26, 2016 grievance. The grievance log revealed that Plaintiff did not file any grievances from March 24 to March 27, 2016.[2] Mr. Martens and Mr. Hendrix also testified that a grievance would not be returned to an inmate without a response on it.

Plaintiff testified that he was familiar with the grievance procedure at Dixon Correctional Center and knew that he had 60 days from the alleged staff

---

[2] Pursuant to Plaintiff's request at the hearing, defense counsel provided a Cumulative Counseling Summary and a Grievance Tracking Log. *See* Dkts. 38-39.

misconduct on March 26, 2016 to file a grievance. *See* ILL. ADMIN. CODE tit. 20 § 504.810(a). Plaintiff testified that he had a brain injury and memory problems, but he believed he submitted his grievance through the institutional mail on March 26 or March 27, 2016. Plaintiff testified that he received the grievance back on May 7, 2016, with no response, noting that this was not the first time.[3] Plaintiff acknowledged that he had until May 25, 2016, to either resubmit his original grievance or submit a new grievance for the alleged staff misconduct on March 26, 2016. Plaintiff testified that he might have submitted additional grievances related to this incident, but he did not receive those back and did not have copies of them. Plaintiff explained that he did not resubmit his original grievance because he wanted to keep it to show the court. Instead, Plaintiff filled out a complaint form on May 7, 2016, the day he claims to have received his grievance back. *See* Dkt. 1 at page 5.

The purpose of exhaustion is to give prison officials an opportunity to address the inmate's complaints internally. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002) (citing 42 U.S.C. § 1997e(a)). Here, Dixon Correctional Center has not yet had a chance to review Plaintiff's grievance. Plaintiff testified that he was familiar with the grievance process and did not indicate he lacked access to the necessary grievance forms.[4] Despite his familiarity with the process and knowing his March 26, 2016 grievance had not been answered, Plaintiff initiated the instant lawsuit instead of submitting a grievance or following up on his original grievance before the 60 day deadline.

Plaintiff was not excused from exhausting his administrative remedies just because he believed the grievance procedure was inefficient.[5] The Court finds that

---

[3] At the hearing, Plaintiff requested the video footage from Dixon Correction Center to show that he deposited his grievance into the institutional mail system on March 26, 2016 and received it back with no response on May 7, 2016. It was later determined that the video footage was no longer available. *See* Dkt. 40.

[4] The Cumulative Counsel Summary indicates that Plaintiff has asked for and received grievance forms on numerous occasions. *See* Dkt. 39 at page 24 ("9/10/2014 16:07:54 Comments: I gave him 10 grievance forms and I informed him that he needs to write his grievances on the forms. I also told him to let me know when I am on his unit if he needs grievance forms."); *Id.* ("8/21/2014 10:23:41 Comments: I gave the Offender 17 grievance forms. I asked if he got the ones I mailed him and he said yes."); *Id.* ("8/18/2014 15:09:07 Comments: I sent the Offender two grievance forms via mail."). Plaintiff was also familiar with how the emergency grievance process worked. *See* Dkt. 39 at page 23 ("11/11/2014 14:18:32 Comments: Emergency grievance dated 11/03/14 received and forwarded to grievance office this date.").

[5] Plaintiff testified that he has been complaining of not getting his grievances back since 2015. *See* Dkt. 39 at page 18 ("9/17/2015 13:39:16 Comments: … Inmate Boykins [sic] requested copies of his grievances. I advised him he needed to see his assigned counselor

there is no evidence that he was prevented from filing a grievance before the May 25, 2016 deadline. Plaintiff makes a general claim that he submitted additional grievances relating to the incident. However, the Court finds this assertion incredible because Plaintiff mentioned several times that he has a memory problem, he never mentioned these additional grievances in his complaint, he did not provide copies or describe these additional grievances, and he admitted that he never spoke to a counselor regarding the claims he now raises in his compliant, which would have been the first step in the normal grievance process. *See* ILL. ADMIN. CODE tit. 20 § 504.810(a). Furthermore, the records reveal Plaintiff's familiarity with submitting numerous grievances and checking on the status of them when he has not received a response.[6] *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

After considering all the evidence submitted, the Court finds that Defendant has proven by a preponderance of the evidence that administrative remedies were available to Plaintiff, and he did not exhaust them with respect to the claims in his complaint. Plaintiff had knowledge of the grievance process, but did not follow the procedures established by the Illinois Department of Corrections. Therefore, it is this Court's Report and Recommendation that Plaintiff's claims be dismissed without prejudice for failure to exhaust.[7] *See Ford v. Johnson*, 362 F.3d 395, 401

---

prior to filing the numerous grievance [sic] for the requested copies. He attempted to complain he has tried to have counselor Shive to copy his grievance but never get the grievances back. I advised Inmate Boykins [sic] this doesn't make sense since I have received numerous just in the past month. Inmate Boykins [sic] did not have a better explaination [sic] other than he feels he is getting jacked around. I advised him [Counselor] Shive does his job and will copy grievances if he has available funds."). Based on the counselor's response, Plaintiff's concern about not receiving grievances back seems to be unsupported.

[6] *See* Dkt. 39 at page 1 ("3/7/2017 12:47:09 Comments: Facility on Level 1 Lockdown. Offender was seen on cell house rounds today. Offender states he has submitted grievances to counselor and has not received a response. Counselor checked and has not received any grievances from offender. Offender was advised to resubmit grievances as long as they are within the 60 Day timeframe. No other issues noted at this time."); *Id.* at page 14 ("11/23/2015 15:36:07 Comments: Offender asked about his revised ticket discipline, advised that his grievance was received and is being processed through the regular channels."); *Id.* at page 17 ("10/2/2015 10:34:58 Comments: Offender requested I copy all the grievances he submitted and respond to the emergency grievances immediately. Offender was advised he needs a copy card to receive any grievance copies and that I do not answer emergency grievances. Offender started yelling stating I am not doing my job and he is going to show me in the orientation manual where it says I have to do this for me.").

[7] Although Plaintiff has not identified the 8 remaining correctional officer defendants in this case, the Court recommends dismissal of Plaintiff's complaint in its entirety. *See Moser v. Universal Eng'g Corp.*, 11 F.3d 720, 723 (7th Cir. 1993) ("The inherent authority of

(7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice."). Any objection to this Report and Recommendation must be filed by October 6, 2017. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Dated: September 19, 2017                     By:

                                              Iain D. Johnston
                                              United States Magistrate Judge

---

the district court to dismiss a case sua sponte and control its docket is well established."); *Malak v. Associated Physicians*, 784 F.2d 277, 280 (7th Cir. 1986) (finding that the court may *sua sponte* enter judgment in favor of non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion).